North Heartland v. United States. Mr. Lopato. Good morning, your honors, and may it please the court. I am John Lopato, the attorney for the plaintiff appellant North Hartland. Your honor, in this Tucker Act contract case, the trial court wrongly dismissed the plaintiff for purported lack of privity contract with the United States. Now, the underlying complaint pleaded in detail the contract that a valid predecessor of the plaintiff had with the United States beginning in 1999. The contract was for my client to purchase a hydroelectric power plant in Vermont that the Rural Utility Service had taken over after a foreclosure and after a bankruptcy. VGL was really the company in privity with the United States. You sold all your rights to VGL. Why do you have any rights? Why are you in privity with the government at all? Not VGL, your honor. The parties started out in the 1999 contract with a contact development company, but in paragraph 10.5 of the 1999 contract, contact said it was going to assign this power plant to a project company called North Heartland LLC. But VGL is the successor. Yes, VGL was the successor because... Then why isn't Judge Rader correct that the contract as assigned was owned by VGL rather than the currently named North Hartland? That was never the basis for the trial court's determination of lack of privity. Let's put that aside for a moment. But just as a factual matter, is it not correct that the contract was owned by VGL and that VGL, a limited liability company, was owned by what's the plaintiff here now and called North Hartland? Yes. So why isn't that fatal to your client? It's not fatal at all because these were entirely paper project companies and North Hartland VGL then became North Hartland LLC of Virginia because when the government... That I'm not following. I don't understand how VGL became North Hartland of Virginia. I thought VGL was owned by North Hartland of Virginia. Isn't that correct? No. North Hartland... Let me back up and go through the steps. Contact Development Company identified another project company it was going to assign the power plant to in the 1999 contract. That was North Hartland LLC of New Hampshire. When the government didn't sell the power plant and the government languished in its duties under the contract, North Hartland LLC of New Hampshire accidentally let its corporate registration lapse. Another company that coveted this power plant and who later bought it in 2005, the Concord Essex Corporation... North Hartland of New Hampshire, right? Technically no because North Hartland of New Hampshire... What does technically no mean? They were the North Hartland LLC of New Hampshire. That lapses completely, right? And you tell us in your briefs that VGL then got all the rights under the APA. Is that correct? That has never been challenged by anybody that... Fine. So VGL has the rights, then you sell them... We sold limited rights to the ultimate purchaser, Concord Essex. You sold VGL to them, not the contract rights. Yes, you sold the... The trial, we did not plead it that way and the trial court findings that way, Your Honor, are not based on Virginia law. They're not based on anything but a misreading of privity cases, lack of privity cases. But the facts show, even the current VGL managing member, Robert Carey, resigns and the head of Concord takes over. That was all because the original 1999 contract only identified two companies that could get this hydropower plant in Vermont. The transaction says all equity interests in the company are conveyed. And we specifically reserved in the contract with the buyer the right to maintain our cause of action against the rural utility service that had accrued certainly between 1999 and 2005 when we did make that limited sale to Concord Essex. We pleaded in our complaint that it was... VGL and the contract, it had the right to sue if there was a right to sue. You sold the company, you can't retain the right to sue because you never had it. Under the... Why is that not... Assignment of Claims Act, we couldn't sell the right to sue and... But you never had the right to sue because all was held by VGL if there was a right to sue, right? VGL sold enough of the contract interest to Concord Essex... VGL didn't sell to them. VGL was sold. It was the equity interest in VGL that was sold to Concord. Equity... That's what the contract says, right? Equity interest is not a phrase used in limited liability law. There was just a one share limited liability document here. But the title of the sale is Agreement for the Purchase and Sale of VGL, the whole thing. And then we can go through that assigned to the buyer all right title interest in VGL. What is left? Enough language in a private confidential contract between Concord Essex so that they could... So they could meet the original 1999 contract terms that this hydropower plant would go to either contact development company or North Heartland LLC. This was a private confidential agreement between the seller and the buyer, Concord Essex. The government didn't review it. The government never saw it. They weren't involved in the drafting. And in Section 13... What does it matter if this is a private or confidential agreement if VGL was sold lock, stock, and barrel? The managers of VGL sold the name, but they continued to North Heartland LLC of Virginia... It's more than the name. It's all equity interests. Am I missing something here? Show me where there's something where it says that this was just in a private in-name sale that it had nothing to do with all equity interest being transferred. In Section 13, which is page 81 of the appendix, we specifically reserved the right... The seller specifically reserved the right to maintain his action for damages against Russ. Now, the background for that was that the buyer, Concord Essex, knew that there was a great deal of animosity and bad faith between the original party to the contract contact that later became North Heartland LLC of Virginia. And these project companies are frequently used in utility purchases. There was no assets or activities or even books and records of these companies. And this case shouldn't founder on the fact that the government's inactivity caused North Heartland LLC of New Hampshire's corporate registration to lapse and then it was taken over by another company just to get the name. This was maybe touched on earlier, but where exactly did VGL come from? It was formed in 2004, correct? The managers of the original North Heartland LLC of New Hampshire, and they were the same people that populated Contact Development Company, when their charter accidentally lapsed in New Hampshire and then the name was taken over by this company that coveted it, those managers reorganized in New Hampshire as Vermont Generating LLC. They were the same people that then became North Heartland LLC of Virginia. And Vermont Generating LLC did make its assignment of the contract purchase rights to North Heartland LLC of Virginia. So the people who owned North Heartland LLC of New Hampshire formed the corporate entity VGL. Yeah, the first North Heartland LLC. And then they also formed North Heartland of Virginia? Yes. And who owned the stock of VGL, North Heartland of Virginia? Yeah, there was no stock. This was a limited liability company with no stock issued. In fact, the agreement in 2005 between the companies, the buyer and the seller, says that VGL and North Heartland LLC of Virginia had no books and records, had no tax filings, had no income, had no assets other than this contract from 1999 with the government. Can we go back to your Section 13 argument? Yes. It says explicitly, in the likely event that RUS chooses again to require these mutual concessions, there's a condition precedent here, isn't there? Yes. Then you would have some rights, but only then. And that didn't happen. No. But the right is if the government asks for dealings, if the government asks to resolve its differences with the seller, VGL, North Heartland LLC of Virginia, and obtain releases. The government never got any releases. The government never reviewed this 2005 transaction. It did nothing. It let it sail through and approved it and then sold the asset to the new purchaser. So the government's never required any such concessions. That was a condition precedent for Section 13 having any effect at all. What effect could that possibly have on this? I differ. The plaintiff appellant differs in the reading of Section 13. Section 13 has three sentences. The first sentence refers to the mutual concessions and mutual releases of liability in the 1999 agreement. I don't understand what this has to do with anything. If North Heartland, Virginia never owned the contract, never had the right to sue, and that contract and the right to sue was in VGL, what difference does it make what might have been reserved in the contract? North Heartland, Virginia never had the right to sue in the first place. Isn't that correct? I don't accept that, Your Honor. Where did North Heartland, Virginia get the right to sue? From VGL, which was populated by the same managers, the same project company. You're saying the right to sue was transferred from VGL to North Heartland, Virginia? That was never even disputed in the contract. But that's your theory. And we pleaded it that way. That the right to sue was transferred from VGL. Yes, and we pleaded it that way. But how could that be consistent with the Anti-Assignment Act? The Anti-Assignment Act did not arise in this case and was not even addressed by the trial judge. You're not answering my question. How could it be consistent with the Anti-Assignment Act that VGL, under your theory, transferred the right to sue to North Heartland, Virginia? It transferred all of its assets and interests, a pure transfer that took place between VGL and North Heartland and Virginia, selling to Concord Essex. It was just a reorganization of the company, only because of the lapse in the charter in New Hampshire in 2004. These were never issues before the trial court. The trial court cited the non-privity cases under the Tucker Act and cited cases involving sureties, insurers, subcontractors, and guarantors of lenders who never at any time had a contract with the government. My client had a valid contract with the government from 1999 to at least 2005 when it sold a limited portion to the new purchaser, Concord Essex, who then acquired the assets. Your client is North Heartland LLC of Virginia, correct? Yes. How did it have— in other words, what was the line from— I guess it was Contech was the original company? Yes. What was the line from Contech to North Heartland of Virginia that establishes that North Heartland of Virginia had a contract with the government? I would answer that question by first saying the government long ago waived that, raising that issue, because they approved this transfer of purchase rights from the original party mentioned. I understand what you're saying, but I think the colloquy that you've been having with the court today demonstrates that there's some question as to exactly what rights were where at what time. I'm just trying to get a fix to help me answer that, namely, how did North Heartland of Virginia get the contract rights that originally resided with Contech? Contech identified in paragraph 10.5 of the 1999 contract that they would place this hydroelectric plant. I'll give you the appendix page for that. That they would place this hydroelectric plant, paragraph 10.7, appendix page 59. I'm sorry, 59? Yes. And the seller, Rural Utility Services, in the bottom of the page, says it recognizes that CDC, Contech, will assign its rights, interests, and obligations under this agreement to a project company called North Heartland LLC. In the event of such an assignment by CDC, no prior written consent of RUS is required. I understand, but that North Heartland LLC that's referenced at 59 in the appendix in that provision, that is the North Heartland LLC that lost its name in 2002, right? Yes, and a completely different company came in and assumed that name, later Concord Essex. So the government really sold this power plant to a different North Heartland LLC than identified in page 59 of the record. What I'm still trying to understand is you have the right in the contract, it says the right's going to go from Contech to North Heartland LLC, New Hampshire, but we're talking about North Heartland LLC, Virginia. How did that North Heartland get the contract right from Contech that originated with Contech? The Contech still continued to exist and was never challenged. The managers, the original contact, then reorganized as Vermont Generating LLC. It was pleaded this way in the complaint and this issue was never raised by any party or by the government. The absence of privity was instead based on the allegation that we sold all of possible contract rights in 1999 or in 2005 and therefore could not bring a suit against the government. The Assignment of Claims Act prevents selling a claim against the government and it prevents tendering it away. We cited cases in our opening brief. Mr. Lopato, you've exceeded your time. Thank you. You've consumed your time as well. Thank you. You're welcome. Mr. McElmail? Yes, good morning. Thank you, Your Honor, and may it please the court. North Heartland of Virginia could not have had claims going back to 1999 because it only came into existence in October 2004. And Mr. Lopato concedes here that whatever rights North Heartland of Virginia got, it did from VGL. VGL wasn't reinstated until December 2004. And Mr. Lopato also just conceded that CDC assigned the contract not to North Heartland of Virginia but to North Heartland of New Hampshire, the North Heartland that lapsed in 2002 and was reinstated as VGL in 2004 and was renamed in 2005 as North Heartland of New Hampshire. So this contract and whatever claims the contractor had flowed from CDC to North Heartland of New Hampshire, which was renamed, reinstated as VGL, was renamed North Heartland of New Hampshire, and all that North Heartland of Virginia ever was was a holding company to hold the one share that represented 100 percent of the equity interest in VGL. And that share is recited at page 74, paragraph 4C of the appendix. There was no reorganization. The problem is, and why I think we've been confused about this, is that the Court of Federal Claims opinion doesn't have these clear findings. There doesn't seem to be a dispute between the parties as to what happened. But the way you presented the case to us didn't involve clear findings by the Court of Federal Claims or a very clear record as to what happened. I think it's clear from the colloquy this morning what happened, but I do think that the government could have made a better and clearer record that would have avoided some of this. I agree that our brief to this Court could have been more clear on that. And what the trial court missed was the link between CDC and North Heartland of New Hampshire that we explained. It said that CDC assigned the contract to North Heartland of Virginia, but that's been conceded away here. It's also conceded away on pages 7 to 8 of the Gray Brief. And so there's no dispute that CDC did not, it really could not have assigned its contract to North Heartland of Virginia because North Heartland of Virginia didn't even exist until after VGL, after VGL's predecessor, North Heartland of New Hampshire, was the assignee of the contract. North Heartland of Virginia was formed only to hold VGL. That's a finding that the trial court did make at note 4 on page 8 of the appendix. And VGL only came into existence after the forming of North Heartland of Virginia. And the only assignment that has been proposed by North Heartland of Virginia here is an assignment between VGL and North Heartland of Virginia, which, as your Honor pointed out, would violate the Assignment of Claims Act. To the extent that the original contract acknowledged there would be an assignment to North Heartland, it was from CDC to North Heartland, whichever North Heartland that might be, not from another company called VGL to a North Heartland of Virginia. So however the court looks at the record, the court should see that North Heartland of Virginia has not met its burden of establishing that it has the right to pursue these claims, that it was ever in privity with the government. And to the extent that these issues were not brought up, some of them were brought up before the trial court. The Assignment of Claims Act issues were not brought up before the trial court by either party. North Heartland of Virginia relied entirely on paragraph 13 for its argument that it reserved claims. But to the extent that issues were not brought up, that is the burden of the plaintiff. Once we put jurisdictional facts in question, once we saw the APS, we identified a jurisdictional problem relating to privity. We understood that North Heartland of Virginia was not the same thing as VGL. It could not have been because it held VGL. And so we put that in issue. North Heartland of Virginia has never, until today actually, has never, until today, conceded that CDC assigned this contract to North Heartland of New Hampshire. It worked around that issue somewhat, accepting that VGL held the contract. But it never actually said, until today, that CDC assigned the contract to North Heartland of New Hampshire. That is fatal to any argument North Heartland of Virginia has. And for those reasons, we ask that the court affirm the trial court. Thank you, Mr. McAmel. Thank you. Our next case is Weeks Marine v. United States. We'll be right back.